IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHAVEZ PROPERTIES-AIRPORT
PARKING ALBUQUERQUE, L.P., a
Georgia limited partnership, and
PARKING COMPANY OF AMERICA, INC.,
a Georgia corporation,

       Plaintiffs,

vs.                                       Civ. No. 02-0145 JP/DJS
                                           Consolidated with
                                           Civ. No. 02-198 JP/DJS and
                                           Civ. No. 02-209 JP/DJS

JOHN LORENTZEN, individually,
PARK & SHUTTLE, INC., a New Mexico
corporation, and WES GOLDEN, an individual,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

       On July 26, 2002, the Defendants filed Defendants' First Motion for Summary Judgment,

Declaring the Joint Venture Agreement and Parking Management Agreement Terminated (Doc.

No. 60).  Having reviewed the briefs and relevant law, I find that the Defendants' first motion for

summary judgment should be denied.

A.  Background

       The following material facts are undisputed unless otherwise noted.  On January 1, 2000,

Plaintiff Chavez Properties-Airport Parking Albuquerque (CPAPA) and Defendant Park & Shuttle

(P & S) entered into a Joint Venture Agreement (JVA) for the purpose of conducting a

commercial parking and shuttle operation on Joint Venture Property near the Albuquerque

airport.  ¶1.02 of JVA.  In the JVA, CPAPA and P & S appointed Plaintiff Parking Company of

America, Inc. (PCA) as the initial parking manager of the Joint Venture Property.  ¶1.07 of JVA.

The JVA provides for termination of the JVA as follows:

> 4.01 Term.  This Agreement shall terminate on December 31, 2009.  Notwithstanding the foregoing, the term of this Joint Venture Agreement shall automatically renew for four (4) additional ten (10) year terms unless a Party shall give notice to the other Party of its intention and election not to renew this Joint Venture Agreement, which notice must be given on or before twelve (12) months prior to the expiration of the then current term of the Joint Venture Agreement.  In each instance where no notice of intent and election not to renew is received or given by a Party, this Joint Venture Agreement shall automatically renew.

> Also on January 1, 2000, CPAPA, P & S, and PCA entered into a Parking Management

Agreement (PMA).  The PMA states at ¶2 that the term of the PMA

> shall be for a period of ten (10) years and shall commence on the effective date of January 1, 2000.  Upon completion of the initial term of this Agreement or any renewal hereof, it shall be automatically renewed for four (4) additional terms of ten (10) years each, unless terminated due to [paragraph] 17 of this Agreement.

In addition, ¶17 of the PMA states in pertinent part that

> [t]his Agreement may be terminated by Owners after the happening of one or more of the following events:  ...
> (b) Manager fails to pay Owners the Net Revenue in the manner specified herein under Paragraph 6(c)....

> Upon the happening of any such event described in Paragraph 17, should Manager fail to cure any monetary default within ten (10) days from the receipt of written notice from Owners, Owners shall have the right to terminate this Agreement; and should Manager fail to cure any such non-monetary default within sixty (60) days from the receipt of written notice thereof, Owners shall have the right to terminate this Agreement; provided, however, should the nature of any default be such that it cannot be cured within sixty (60) days, Manager shall be deemed to have cured such default if within such sixty (60) days period it shall commence performance and thereafter diligently prosecute the same to completion.

> In any case in which provision is made herein for the termination of this Agreement by Owners or in the case of abandonment or vacating of the Premises by Manager, Owners may reenter the Premises and take possession thereof with or without process of law and to distrain for any rent, damages or other sums that may be due hereunder any

2

property thereon belonging to Manager and Manager shall quit and surrender peaceably the premises to Owners.

Paragraph 6(c) of the PMA states that CPAPA is to receive 57% of the net revenue and P & S is to receive 43% of the net revenue.

On December 29, 2001, Defendant Lorentzen, president of P & S, wrote to Robert Chavez, vice-president of PCA and a general partner of CPAPA, that certain expenses incurred by PCA during the year 2000 and during the year 2001 until November 2001 were not authorized by the JVA or the PMA. Defendant Lorentzen, therefore, calculated that the Joint Venture owed him $23,144.00. Defendant Lorentzen demanded that he be paid this sum on or before January 9, 2002, or else he would consider the JVA and PMA null and void.

Sometime after December 29, 2001, Robert Chavez contacted Defendant Lorentzen and asked that he come to Cincinnati, Ohio to discuss the disputed expenses and to review financial records. On January 13, 2002, Defendant Lorentzen began to escrow Joint Venture funds in a separate bank account because he believed PCA had not responded to his December 29, 2001 notice of a monetary default as required under ¶17 of the PMA. Defendant Lorentzen considered the JVA and PMA terminated at that time. Nonetheless, Defendant Lorentzen had made plans to go to Cincinnati on January 25, 2002.

Defendant Lorentzen did not go to Cincinnati on January 25, 2002 as planned. Instead, he wrote a letter dated January 25, 2002 to Robert Chavez in which he notified the Plaintiffs that P & S terminated the JVA and PMA because PCA failed to pay monies owed to P & S after PCA received notice on December 29, 2001 of the monies due to P & S. Defendant Lorentzen also contended that the JVA was violated because CPAPA pledged Joint Venture income for the

3

procurement of a loan.  In addition, Defendant Lorentzen contended that the $20,000 in Hyatt-Tamaya expenses were not appropriate JVA expenses.

On January 28, 2002, Robert Chavez responded to Defendant Lorentzen's January 25, 2002 letter by hand-delivering a letter to Defendant Lorentzen in Albuquerque, New Mexico. Robert Chavez noted in the January 28, 2002 letter that the JVA can only be terminated by notice on December 31, 2009.  The letter also reflected that Robert Chavez was disappointed that Defendant Lorentzen had not gone  to Cincinnati to discuss the disputed expenses.  Robert Chavez further noted that the loan mentioned in Defendant Lorentzen's January 25, 2002 letter had nothing to do with any income due to P & S.  Moreover, Robert Chavez stated in his January 28, 2002 letter that Defendant Lorentzen owed the Joint Venture $14,004.65 for P & S's share of the loss with respect to the Hyatt-Tamaya venture and that Defendant Lorentzen owed the Joint Venture $7,000 for unauthorized expenses.  Additionally, Robert Chavez stated that Defendant Lorentzen should move out of his offices at Airport Fast Park/Park & Shuttle as originally contemplated by the parties.

Apparently, Robert Chavez and Defendant Lorentzen discussed accounting issues between January 28, 2002 and January 30, 2002 while Robert Chavez was in Albquerque.  On January 30, 2002, Robert Chavez demanded in a letter to Defendant Lorentzen that he pay the Joint Venture $74,135 in expenses P & S allegedly owed the Joint Venture.

B.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the

light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

C.  Discussion

　　　The Defendants move for summary judgment declaring that the PMA and JVA were both terminated in January 2002, or in the alternative, that the PMA and JVA should now be terminated to effectuate an efficient breach of contract.  Moreover, the Defendants ask the Court to determine the termination dates of the PMA and JVA, oversee the departure of the Plaintiffs from the Defendants' property which was included in the Joint Venture Property, and reserve for trial the issue of damages on the existing claims.

　　　1.  Whether the PMA and JVA were terminated in January 2002

　　　　　a.  The PMA

　　　The Defendants argue first that the PMA was terminated in January 2002 under ¶17 of the PMA.  The Defendants contend that PCA had failed to pay P & S its full percentage of the net revenue in 2000 and 2001 as required under ¶6(c) of the PMA.  *See* ¶17 of the PMA (failure to

5

pay net revenue as described in ¶6(c) of the PMA is ground for terminating PMA) . The Defendants also contend that Defendant Lorentzen gave the Plaintiffs notice of the alleged monetary default in the December 29, 2001 letter to Robert Chavez.  *See id.*(written notice of monetary default required prior to termination of the PMA).  The Defendants assert that the Plaintiffs failed to cure the alleged monetary default within ten days of receiving the December 29, 2001 letter and so the Defendants had the right to terminate the PMA under ¶17 of the PMA.  *See id.* (failure to cure monetary default within ten days gives rise to a right to terminate the PMA).  Consequently, the Defendants assert that Defendant Lorentzen was entitled under ¶17 to take possession of the Joint Venture's funds beginning on January 13, 2002.  *See id.* (upon termination of the PMA, Owners may take possession of sums that may be due them).

The Plaintiffs, however, argue that there is a genuine issue of material fact as to whether PCA failed to pay P & S what it was due under ¶6(c) of the PMA.  Specifically, the Plaintiffs assert that the parties disagree as to whether P & S's share of the Hyatt-Tamaya loses should come out of P & S's share of the Joint Venture profits.  Furthermore, the evidence clearly shows a disagreement by the parties on whether various expenses attributed to P & S should be paid to the Joint Venture.  The Plaintiffs have presented sufficient evidence to demonstrate that there is a genuine issue of material fact as to whether PCA failed to pay P & S as prescribed by ¶6(c) of the PMA.  Accordingly, there is a genuine issue of material fact as to whether P & S could terminate the PMA under ¶17 for a monetary default.  Defendants' first motion for summary judgment will be denied as to the Defendants' request that the Court declare that the PMA was terminated in January 2002.

b. The JVA

The Defendants argue that in addition to the JVA procedure for termination of the JVA in December 2009, the Court should impute ¶17 of the PMA to the JVA as another procedure for terminating the JVA. In New Mexico, "implied covenants are not favored in law, especially when a written agreement between the parties is apparently complete. The general rule is that an implied covenant cannot coexist with express covenants that specifically cover the same subject matter." *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 704, 858 P.2d 66, 80 (1993), *cert. denied*, 510 U.S. 1116 (1994)(citations omitted). In other words, "when the contract between the parties speaks to the obligation sought to be implied, courts will not write that implied obligation into the contract." *Id*. However, "[a] court may have to imply terms in a contract when to do otherwise would render the contract absurd and meaningless." *Estate of Griego ex rel. Griego v. Reliance Standard Life Ins. Co.*, 2000-NMCA-002 ¶21, 128 N.M. 676.

In this case, the JVA unambiguously provides for its termination in ¶4.01 of the JVA. Moreover, the JVA is not so inextricably intertwined with the PMA that the JVA would be absurd or meaningless without implying ¶17 of the PMA.[1] For example, if the PMA is terminated, the JVA could nonetheless continue to exist without a parking manager until a new one is appointed and a new PMA entered into. Under these circumstances, it would be improper for this Court to imply ¶17 of the PMA in the JVA. Consequently, the JVA cannot be terminated until December 2009. Alternatively, even if ¶17 of the PMA could be implied in the JVA, there still remains a genuine issue of material fact as to whether P & S could have terminated the JVA for monetary

---

[1]The Plaintiffs suggest that ¶5.05 of the JVA includes language which integrates the PMA with the JVA. The language in ¶5.05, however, only precludes any agreement not embodied in the JVA from being binding upon the parties and describes how to amend the JVA.

default.  For these reasons, the Defendants' first motion for summary judgment will be denied as to the Defendants' request that the Court declare that the JVA was terminated in January 2002.

      2.   Whether an Efficient Breach of Contract Can Occur Now

      The Defendants argue in the alternative that P & S should be allowed to commit an efficient breach of the PMA and JVA in order to mitigate damages.  An efficient breach is a deliberate breach which "may be justified in some sense if the promisee can be fully compensated for the loss and the benefit to the promisor from the breach may provide society with a net gain...."  *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 9, 791 P.2d 452, 460 (1990).  Efficient breaches are not distinguished from other contract breaches except that punitive damages are not awarded for an efficient breach and specific performance is not granted if monetary damages can adequately compensate the promisee's actual losses.  *Restatement of the Law, Contracts 2d*, Introductory Note to Ch. 16 at 100 (1981).

      The Defendants, if they so desire, may commit an efficient breach of the PMA and JVA to mitigate damages.  It is not the Court's role, however, to declare in advance when the JVA and PMA will be terminated by an efficient breach, or to declare in advance what the consequences of the efficient breach should be with respect to dissolution of the Joint Venture.  The Court will address the issue of whether an efficient breach occurred only with respect to any damages questions which may subsequently arise.  Defendants' first motion for summary judgment will be denied as to the Defendants' request to declare when the PMA and JVA will be terminated following an efficient breach and to oversee the departure of Plaintiffs from the Joint Venture property belonging to the Defendants.

IT IS ORDERED that Defendants' First Motion for Summary Judgment, Declaring the Joint Venture Agreement and Parking Management Agreement Terminated (Doc. No. 60) is denied.


_____
CHIEF UNITED STATES DISTRICT JUDGE